# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2998

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jamie Smith, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 2011
Filed: September 22, 2011

_____

Before MURPHY and COLLOTON, Circuit Judges, and ERICKSON,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Jamie Smith pled guilty to conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and to possession with intent to distribute five grams or more of pure methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

(b)(1)(B). The district court[2] sentenced Smith to 168 months' imprisonment, and ordered forfeiture of $10,000 pursuant to 21 U.S.C. § 853. Smith appeals, contending that the court erred in applying a two-level specific offense characteristic for possession of a firearm, pursuant to USSG § 2D1.1(b)(1). He also argues that his sentence is unreasonable, and that the forfeiture order is unauthorized by statute and unconstitutional. We affirm.

## I.

In June 2009, federal law enforcement officers executed a search warrant at Smith's residence and found approximately 45.5 grams of methamphetamine mixture, a digital scale, and drug packaging materials in the "southwest bedroom/den/TV room." Approximately fifteen feet from the methamphetamine, the officers found an unloaded Colt Sporter semi-automatic assault rifle. The rifle was located in a partially open gun case that extended from the open door of a closet in Smith's living room. The closet also contained firearm cleaning materials, targets, two empty magazines, and ammunition.

A grand jury indicted Smith on drug trafficking charges. Pursuant to 21 U.S.C. § 853, the indictment sought criminal forfeiture of proceeds obtained from the offenses, "including but not limited to" $1,000,000 in United States currency or substitute assets. The court accepted Smith's guilty plea on March 10, 2010. On June 24, 2010, the government requested a preliminary forfeiture order, seeking a $10,000 money judgment against Smith. The court granted the order on June 30, 2010. Smith filed a motion challenging the forfeiture, and at a sentencing hearing, the court heard arguments from both Smith and the government as to the propriety of the criminal forfeiture order. At the hearing in August 2010, the court determined that the

---

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

preliminary order of forfeiture was proper, and on September 9, 2010, the court entered a final order of forfeiture.

Smith also objected to the application of a two-level specific offense characteristic under USSG § 2D1.1(b)(1) for possession of a firearm. The district court found that the adjustment was appropriate, and determined that Smith's guideline range was 135 to 168 months' imprisonment. The court imposed a sentence of 168 months' imprisonment.

## II.

In considering Smith's challenge to the calculation of his advisory guideline range, we review the district court's factual determinations for clear error and its application of the sentencing guidelines *de novo*. *United States v. San-Miguel*, 634 F.3d 471, 474 (8th Cir. 2011). A specific offense characteristic applicable to drug trafficking offenses provides for an increase of two offense levels if a defendant possessed a firearm. USSG § 2D1.1(b)(1). The government bears the burden to establish by a preponderance of the evidence that the adjustment is appropriate. *United States v. Perez-Guerrero*, 334 F.3d 778, 783 (8th Cir. 2003). The adjustment "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.3).

Smith does not dispute that he possessed a rifle that was found at his residence in proximity to methamphetamine. He claims that because he used the gun solely for target practice, there is no relationship between the rifle and his offenses. But the use or intended use of firearms for one purpose, even if lawful, does not preclude a finding that the defendant used the firearm for the prohibited purpose of facilitating a drug trade. *Brown v. United States*, 169 F.3d 531, 533 (8th Cir. 1999). Although mere presence is insufficient to establish a nexus between a firearm and drug offense, *see United States v. Moore*, 212 F.3d 441, 447 (8th Cir. 2000), "[a] nexus exists where

-3-

there is a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant." *Perez-Guerrero*, 334 F.3d at 783 (internal quotations omitted). Smith was present when officers found a rifle approximately fifteen feet from a large amount of drugs. The rifle was accessible in a partially open case that extended from the open door of a closet, and Smith admitted that he normally stored drugs at his home. In these circumstances, the district court's finding that Smith possessed a firearm in connection with his offense was not clearly erroneous.

Smith also challenges the substantive reasonableness of his sentence. We review the reasonableness of the district court's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). Because the district court imposed a sentence within the advisory guideline range, we accord the sentence a presumption of reasonableness. *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009).

We reject Smith's claims that the district court erred by ignoring his minimal criminal history and "limited" role in the conspiracy, and that the court gave undue weight to the quantity of drugs involved in his offenses. The sentencing guidelines account for Smith's minimal criminal history. *See* USSG § 4A1.1; *United States v. Wilcox*, 487 F.3d 1163, 1175 (8th Cir. 2007). The record does not support Smith's claim that he played a limited role in the conspiracy, as Smith stored over ten pounds of methamphetamine at his residence for distribution during the conspiracy. Finally, the court's decision to weigh certain factors under 18 U.S.C. § 3553(a) more heavily than other factors that might favor leniency is a permissible exercise of the court's discretion. *Ruelas-Mendez*, 556 F.3d at 658.

The district court considered several relevant aggravating factors: that Smith had a history of alcohol and substance abuse, disobeyed court orders by using drugs while on pretrial release, failed to pay his child support, trafficked a large quantity of drugs, and testified untruthfully at the sentencing hearing. The court's explanation

satisfies us that the presumptively reasonable sentence is indeed substantively reasonable.

## III.

Smith asserts that the court's criminal forfeiture order in the form of a money judgment should be vacated, because a money judgment is not authorized by statute. He also contends that the order violates his procedural due process rights, his substantive due process rights, the Double Jeopardy Clause, and the Eighth Amendment prohibition against excessive fines.[3] "We review claims of constitutional error and issues of statutory construction *de novo*." *Royal v. Kautzky*, 375 F.3d 720, 722 (8th Cir. 2004) (internal quotations omitted).

## A.

21 U.S.C. § 853 provides that a defendant convicted of a drug trafficking offense "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." *Id.* § 853(a). Property subject to forfeiture "includes – (1) real property, including things growing on, affixed to, and found in land; and (2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities." *Id.* § 853(b). Section 853(p) provides that "the court shall order the forfeiture of any other property of the defendant," if "as a result of any act or omission of the defendant," the property subject to forfeiture:

(A) cannot be located upon the exercise of due diligence;

---

[3]Smith also claims that the court misapplied the sentencing guidelines in imposing the money judgment, but the court entered the money judgment pursuant to 21 U.S.C. § 853.

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

*Id.* § 853(p)(1).

The district court ordered forfeiture of $10,000 in drug proceeds, but these funds could not be located. Smith had insufficient assets at the time of sentencing for the court to order forfeiture of substitute assets that could be seized immediately. Therefore, the court entered a money judgment for $10,000, and the question arises whether such a judgment is authorized by the provision of § 853(p) for forfeiture of "any other property of the defendant." This court has not addressed the point directly. *Cf. United States v. Gregoire*, 638 F.3d 962, 971-72 (8th Cir. 2011).

At least five circuits have held that § 853 permits imposition of a money judgment on a defendant who has no assets at the time of sentencing. *See United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (per curiam); *United States v. Vampire Nation*, 451 F.3d 189, 201-02 (3d Cir. 2006); *United States v. Casey*, 444 F.3d 1071, 1077 (9th Cir. 2006); *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006); *United States v. Baker*, 277 F.3d 955, 970 (7th Cir. 2000). We think their conclusion is sound. The statute is phrased broadly, allowing forfeiture of "any other property of the defendant," 21 U.S.C. § 853(p), without a temporal limit. When that broad text is considered together with the express statutory direction that the provision is to "be liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o), there is little doubt that "any other property" extends to property acquired by the defendant after the imposition of sentence. As several courts have noted, a contrary interpretation would give defendants an incentive to dissipate ill-gotten assets in order

to avoid a forfeiture sanction, a result that would frustrate the remedial purposes of the statute in contravention of § 853(o). *See Awad*, 598 F.3d at 78-79; *Vampire Nation*, 451 F.3d at 202; *Casey*, 444 F.3d at 1074. The district court was authorized by § 853(p) to enter the money judgment.

## B.

Procedural due process requires that an individual receive adequate notice and procedures to contest the deprivation of property rights. *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 835 (8th Cir. 2010). We reject Smith's arguments that the indictment failed to provide him sufficient notice that the government might seek a money judgment, and that he was entitled to a hearing before the district court entered a preliminary forfeiture order. The indictment stated that the government sought forfeiture, pursuant to 21 U.S.C. § 853, of cash proceeds of $1,000,000 obtained as a result of the charged offenses, or substitute assets. The indictment need not specify what property will be sought as substitute assets, *see United States v. Hatcher*, 323 F.3d 666, 673 (8th Cir. 2003), or state explicitly that the government might seek a money judgment. *See United States v. Kalish*, 626 F.3d 165, 169 (2d Cir. 2010); *United States v. Navarro-Ordas*, 770 F.2d 959, 969 n.19 (11th Cir. 1985). The indictment stated that the government sought cash proceeds, providing adequate notice that a money judgment might be sought. *See Kalish*, 626 F.3d at 169. Smith filed a motion in opposition to the forfeiture, and argued his position at a hearing before the court entered the final forfeiture order. Smith therefore received adequate notice and had a meaningful opportunity to advance his position.

Smith next contends that the money judgment violates his substantive due process rights, because there is no nexus between money that he may obtain in the future and his offenses. The only support Smith cites for his purported nexus requirement is Federal Rule of Criminal Procedure 32.2(b)(1)(A). Although Rule 32.2(b)(1)(A) requires a nexus between *specific property* sought for forfeiture and the

offense, it states that if the government seeks a money judgment, "the court must determine the amount of money that the defendant will be ordered to pay." Rule 32.2 also contains provisions for ordering forfeiture of substitute property. Fed. R. Crim. P. 32.2(b)(2)(A), (e)(1)(B). A constitutional nexus requirement for *all* property subject to forfeiture would render the forfeiture of substitute assets, by definition, unconstitutional. The statute is rationally related to legitimate "punitive, remedial, and corrective purposes," and it is therefore consistent with the Due Process Clause. *See United States v. Shepherd*, 171 F. App'x 611, 616 (9th Cir. 2006); *cf. Libretti v. United States*, 516 U.S. 29, 47-48 (1995) (upholding criminal forfeiture of, *inter alia*, substitute property).

Smith also asserts a violation of double jeopardy. "The Double Jeopardy Clause protects against efforts to impose punishment for the same offense in two or more separate proceedings; double jeopardy concerns are not implicated, however, where multiple punishments are imposed for the same offense in a single proceeding, so long as Congress intended that result." *United States v. Smith*, 75 F.3d 382, 384 (8th Cir. 1996). "Forfeiture is an element of the sentence imposed *following* conviction," and "Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct . . . , not as a separate substantive offense." *Libretti*, 516 U.S. at 38-39. Because Smith was punished pursuant to a single prosecution, his claim fails. That the court entered the final forfeiture order almost two weeks after entering the judgment does not establish a double jeopardy violation. The district court had entered a preliminary forfeiture order, and the court at sentencing rejected Smith's argument that the forfeiture order was not proper under the law. The failure to include a forfeiture order in the judgment was a clerical error, and the court retained jurisdiction to correct the judgment by entering a final forfeiture order. *See* Fed. R. Crim. P. 36; *Hatcher*, 323 F.3d at 673-74.

Smith finally avers that the money judgment is an excessive fine because he is indigent. A punitive forfeiture violates the Excessive Fines Clause if "the amount of

the forfeiture is grossly disproportional to the gravity of the defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 337 (1998). "[A] defendant's inability to satisfy a forfeiture at the time of conviction, in and of itself, is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." *United States v. Levesque*, 546 F.3d 78, 85 (1st Cir. 2008). Even if it appears at the time of sentencing that Smith cannot satisfy the forfeiture in the future, there is always a possibility that he might legitimately come into money. *Id.* Smith was highly culpable; he participated in a large drug conspiracy, storing over ten pounds of methamphetamine at his residence for distribution. The seriousness of his offense is reflected in the applicability of a 120-month statutory minimum sentence. *See* 21 U.S.C. § 841(b). The $10,000 money judgment, representing proceeds from Smith's drug trafficking offenses, is not grossly disproportional to those same offenses.

\*     \*     \*

The judgment of the district court is affirmed.

_____